1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# CENTRAL DISTRICT OF CALIFORNIA

10
11
12

| DIANE GARCIA MELENDEZ, | ) | NO. EDCV 12-452 AGR |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

18        Plaintiff Diane Garcia Melendez filed this action on April 11, 2012.

19   Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the

20   magistrate judge on May 14 and November 3, 2012.  (Dkt. Nos. 7, 13.)  On

21   November 1, 2012, the parties filed a Joint Stipulation ("JS") that addressed the

22   disputed issues.  The court has taken the matter under submission without oral

23   argument.

24        Having reviewed the entire file, the decision of the Commissioner is

25   reversed and remanded for further proceedings consistent with this opinion.

26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**I.**

## PROCEDURAL BACKGROUND

On March 17, 2008, Melendez filed an application for supplemental security income, which alleged a disability onset date of March 13, 2007. Administrative Record ("AR") 12, 223-29.  The application was denied initially and on reconsideration.  AR 12, 98-99.  Melendez requested a hearing before an Administrative Law Judge ("ALJ").  On February 17, 2010, the ALJ conducted a hearing at which Melendez and a medical expert ("ME") testified.  AR 53-88.  The hearing was continued to allow Melendez to submit additional medical records. AR 73-74, 88.  On June 4, 2010, the ALJ conducted a supplemental hearing at which Melendez and a vocational expert ("VE") testified.  AR 29-52.  On July 21, 2010, the ALJ issued a decision denying benefits.  AR 9-22.  On January 30, 2012, the Appeals Council denied the request for review.  AR 1-5.  This action followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must

2

1   defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

2                                         **III.**

3                                  **DISCUSSION**

4       **A.      Disability**

5           A person qualifies as disabled, and thereby eligible for such benefits, "only

6   if his physical or mental impairment or impairments are of such severity that he is

7   not only unable to do his previous work but cannot, considering his age,

8   education, and work experience, engage in any other kind of substantial gainful

9   work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20,

10  21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks

11  omitted).

12      **B.      The ALJ's Findings**

13          The ALJ found Melendez has the following severe impairments:

14  degenerative disc disease of the lumbar spine, sleep apnea, and depressive

15  disorder.  AR 14.  She does not have an impairment or combination of

16  impairments that meets or equals one of the listed impairments.  AR 15.  She has

17  the residual functional capacity ("RFC") to lift and/or carry twenty pounds

18  occasionally and ten pounds frequently, and stand/walk or sit for six hours.  AR

19  16.  She can occasionally climb ramps and stairs, balance, bend, stoop, crouch,

20  and kneel, but never climb scaffolds or ropes.  *Id.*  She should avoid working with

21  dangerous machinery or at unprotected heights, or with fumes, odors, gases,

22  dust, and chemicals.  *Id.*  She should not perform safety operations or be

23  responsible for the safety of others, or perform work requiring hyper-vigilance,

24  defined as intense sustained concentration such as air traffic controller.  *Id.*  She

25  has no past relevant work, but there are jobs that exist in significant numbers in

26  the national economy that she can perform such as cashier II and small products

27  assembler.  AR 21-22.

28

                                          3

**C.   Severe Impairments**

Melendez contends the ALJ erred by not considering all of her impairments and failing to determine whether those impairments were severe.

At step two of the sequential analysis, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not less than twelve months. *Id.* at 140.

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 404.1508; 20 C.F.R. § 416.908. "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[1] *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen*, 80 F.3d at 1290 ("[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and quotation marks omitted).

"An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a

---

[1]  The ability to do basic work activities includes "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," "capacities for seeing, hearing, and speaking," "understanding, carrying out, and remembering simple instructions," "use of judgment," "responding appropriately to supervision, co-workers, and usual work situations," and "dealing with changes in a routine work setting." *Yuckert*, 482 U.S. at 168 n.6 (citation and quotation marks omitted); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

1   minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d
2   683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted).  Step two is "a
3   *de minimis* screening device [used] to dispose of groundless claims" and the
4   ALJ's finding must be "'clearly established by medical evidence.'" *Id.* at 687
5   (citations and quotation marks omitted).

6   　　　The ALJ found that Melendez has the severe impairments of degenerative
7   disc disease of the lumbar spine, sleep apnea, and depressive disorder.  AR 14.
8   Melendez argues that the ALJ did not fully consider her anxiety, lupus, Sjogren's
9   syndrome, obesity, fibromyalgia, and chronic fatigue syndrome.[2]

10  　　　Even assuming that the ALJ erred in failing to identify anxiety, lupus,
11  Sjogren's syndrome, obesity, fibromyalgia and chronic fatigue syndrome as
12  severe impairments at step two, any error was harmless because prejudice could
13  occur only in later steps.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)
14  (failure to address particular impairment at step two is harmless when ALJ
15  evaluates claimant's impairments in later steps of sequential evaluation process);
16  *see also Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir.
17  2006) (ALJ's error harmless where it is "inconsequential to the ultimate
18  nondisability determination").

19  　　　The ALJ stated he "considered all of [Melendez's] impairments (severe and
20  nonsevere) in determining her RFC.  AR 15.  The ALJ acknowledged the
21  diagnoses of Sjogren's syndrome and an undifferentiated connective tissue

22
23
24

25  _____

26  　　　[2]  In her Reply, Melendez argues the ALJ did not properly evaluate whether
     her PTSD was severe.  Dr. Whitehead Gleaves provided the only PTSD
27  diagnosis in the record based on Melendez's memories of childhood sexual
     abuse.  AR 560.  As discussed below, the ALJ properly discounted Dr. Whitehead
28  Gleaves' opinion.  In addition, the record contains no evidence showing that
     PTSD had more than a minimal effect on her ability to work.

disease.[3]  AR 14, 678-81.  On March 16, 2010, Dr. Ahluwalia, a rheumatologist,

found Melendez had no synovitis or tender joints, and full range of motion in all

joints.  AR 14, 18, 822.  Dr. Ahluwalia initially diagnosed a history of systemic

lupus erythematosus, hypothyroidism, plaquenil therapy, degenerative disc

disease of the lumbar spine, fibromyalgia and obesity.  AR 14, 822.  On April 20,

2010, after treatment, further examination, and review of laboratory data, Dr.

Ahluwalia diagnosed undifferentiated connective tissue disease with +ANA and

+SSA ab and back pain.  The ALJ noted that Melendez's treating physician, Dr.

Hillis, noted fibromyalgia, chronic back pain, chronic fatigue syndrome, dry eyes

and dry mouth.[4]  AR 18, 690.  The ALJ gave Dr. Hillis' opinion little to no weight

for the reasons discussed below.  AR 18, 688-90.  The ALJ noted the diagnosis

of anxiety and inferred that it was reasonably controlled with medication.[5]  AR 19.

The Commissioner argues that Melendez "failed to raise any implicit claim

[in her application or testimony] that her obesity was a limiting factor."  JS 6.

Melendez argues that at 5'3" and at least 250-300 pounds, "obesity would have a

grave impact on her conditions and her ability to perform work-related tasks."[6]  JS

---

[3]  Undifferentiated connective tissue disease ("UCTD") is a systemic autoimmune disease that can involve joints, cartilage, muscles, and skin.  UCTD includes syndromes with features that do not meet the diagnostic criteria for any one connective tissue disease such as Lupus or Sjogren's syndrome.  *See* Listing § 14.06.

[4]  The ALJ mistakenly referred to Dr. Hillis as "Dr. Hill."  AR 18.

[5]  In January 2010, Melendez reported that when she stopped taking her antidepressant for a month, she experienced increased anxiety and more panic attacks.  AR 19, 777.  When she resumed taking Zoloft and Wellbutrin, she reported decreased anxiety and depressive symptoms.  AR 19, 803.

[6]  Obesity can be considered in combination with other impairments to determine whether, when viewed in the aggregate, the multiple impairments are equivalent to a listed impairment.  *See* Social Security Ruling ("SSR") 02-1p (2002).  Social Security rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

5.  Again, any error would be harmless because prejudice could occur only in the later steps.  *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

### D.        Medical Equivalency to Listed Impairments 1.04 and 14.10

Melendez contends the ALJ improperly considered whether she met or equaled Listing 1.04 and Listing 14.10.

The claimant bears the burden of demonstrating that his impairments are equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity.  *Bowen*, 482 U.S. at 141, 146 n. 5.  "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step."  *Id.* at 141; *see also Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.* at 530 (citation omitted) (emphasis in original).  "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's impairment."  *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526) (emphasis in original).  "'Medical equivalence must be based on medical findings.'  A generalized assertion of functional problems is not enough to establish disability at step three."  *Id.* at 1100 (quoting 20 C.F.R. § 404.1526).

7

1    "An ALJ must evaluate the relevant evidence before concluding that a claimant's

2    impairments do not meet or equal a listed impairment.  A boilerplate finding is

3    insufficient to support a conclusion that a claimant's impairment does not do so."

4    *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

5         Listing 1.04 governs musculoskeletal impairments and requires a claimant

6    to show a disorder of the spine such as "herniated nucleus pulposus, spinal

7    arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet

8    arthritis, vertebral fracture[], resulting in compromise of a nerve root (including the

9    cauda equina) or the spinal cord" with either:  "A.  Evidence of nerve root

10   compression characterized by neuro-anatomic distribution of pain, limitation of

11   motion of the spine, motor loss (atrophy with associated muscle weakness or

12   muscle weakness) accompanied by sensory or reflex loss and, if there is

13   involvement of the lower back, positive straight-leg raising test (sitting and

14   supine);" "B.  Spinal arachnoiditis, confirmed by an operative note or pathology

15   report of tissue biopsy, or by appropriate medically acceptable imaging,

16   manifested by severe burning or painful dysesthesia, resulting in the need for

17   changes in position or posture more than once every 2 hours;" or "C.  Lumbar

18   spinal stenosis resulting in pseudoclaudication, established by findings on

19   appropriate medically acceptable imaging, manifested by chronic nonradicular

20   pain and weakness, and resulting in inability to ambulate effectively."  20 C.F.R.

21   Pt. 404, Subpt. P, App. 1, § 1.04.

22        Melendez does not demonstrate that she meets or equals Listing 1.04.

23   She notes that on April 30, 2007, approximately six weeks after she fell while

24   working at Sonic, she was diagnosed by Robert Chouteau, D.O., with traumatic

25   cervical, thoracic, and lumbar myositis. JS 11-12; AR 490.  She had bilateral S1

26   joint lumbar dysfunction with lumbar RNP at L4-L5 with right leg radiculopathy

27   and severe weakness to the extensor hallicum longus, right leg, at 3/5.  JS 12;

28   AR 491.  She had straight-leg raising 50 degrees with positive tripod sign with

8

definite weakness at 3/5 in the extensor hallucis longus.  JS 12; AR 491.  She had limitation on full flexion and extension of the cervical and thoracic spine.[7]  JS 12; AR 491.  However, these findings alone are not sufficient to demonstrate that she satisfies Listing 1.04.  The ALJ noted that on May 15, 2007, Melendez went to the Emergency Department complaining of back pain, but the physical examination revealed CVA tenderness, no midline tenderness, no numbness, pain on movement, severe pain on palpation to flank, no redness, full range of motion, no saddle parethesias, intact sensation, and 5/5 strength in all extremities.  AR 17, 408.  An MRI of the lumbar spine performed on April 16, 2007 showed minor degenerative disc disease at T10-11, L4-5, and L5-S1 levels with mild bulging of the L4-5 disc.  AR 17, 488.  An Emergency Department record dated April 13, 2007 reflects normal range of motion except for increasing pain with back movements, no significant neurological abnormalities, and negative straight leg raising tests.  AR 17, 420.  The ALJ also noted that Dr. Chouteau opined that based on radiographs and the April 16, 2007 MRI, Melendez's lumbar spine and pelvis were normal and her complaints of severe pain and lower extremity weakness were not consistent with her MRI.  AR 17, 374.  Melendez was noted to have poor range of motion in May and July 2008, yet an MRI of the lumbar spine on June 12, 2008 revealed mild disc protrusions at L4-5 and L5-S1.  AR 17, 587, 602, 626.  Treatment records from Dr. Ahluwalia, dated March 16, 2010, indicated Melendez had full range of motion of all joints with no synovitis or tenderness.  AR 18, 822.  Dr. Lorber found no evidence of focal neurologic deficit in the lower extremity.  AR 69.

The ALJ considered Listing 14.10, Sjogren's syndrome, but found that

---

[7]  Melendez also notes that in May 2007, she was limited to not lifting anything over 10 pounds and told to avoid prolonged sitting and "other activities."  JS 12; AR 410.  The limitations are listed on Emergency Department discharge instructions and appear to be generic instructions for spine related injuries lasting 2-3 weeks.  AR 410.

1   Melendez did not meet or equal the listing.  AR 15.  Listing 14.10 requires "A.
2   Involvement of two or more organs/body systems, with:  1. One of the
3   organs/body systems involved to at least a moderate level of severity; and 2.  At
4   least two of the constitutional symptoms or signs (severe fatigue, fever, malaise,
5   or involuntary weight loss);" or "B.  Repeated manifestations of Sjögren's
6   syndrome, with at least two of the constitutional symptoms or signs (severe
7   fatigue, fever, malaise, or involuntary weight loss) and one of the following at the
8   marked level:  1.  Limitation of activities of daily living;" "2.  Limitation in
9   maintaining social functioning;" "3.  Limitation in completing tasks in a timely
10  manner due to deficiencies in concentration, persistence, or pace."  20 C.F.R. Pt.
11  404, Subpt. P, App. 1, § 14.10.

12      Melendez contends the ALJ dismissed her Sjogren's syndrome diagnosis.
13  She argues that she "likely" meets or equals Listing 14.10 because she has
14  lupus, fibromyalgia, and severe mental illness.  She suffers from significant
15  fatigue and malaise, has cognitive dysfunction and poor memory, has
16  experienced involuntary weight loss (although she is still obese), and has been
17  treated for significant back pain.

18      Melendez does not demonstrate that she meets or equals Listing 14.10.
19  The ALJ acknowledged that she was serum positive for Sjogren's syndrome and
20  an undifferentiated connective tissue disease, but found no indication that her
21  conditions were of a moderate level of severity.  AR 14, 823.  She complained of
22  dry eyes and fatigue, and then worsening nausea, vomiting, and arthralgia, but
23  examination showed no synovitis or tender joints and full range of motion in all
24  joints.  AR 14, 679, 821-22.  The ALJ found no marked limitation of activities of
25  daily living, social functioning, or concentration, persistence, or pace.  AR 15.  He
26  noted that Dr. Whitehead Gleaves' mental status examination indicated Melendez
27  was fully oriented, could repeat five digits forward and three digits backward,
28  could learn a list of three words after one repetition, could recall two out of three

words after a five minute interval, could name the president of the United States, could complete serial threes with no mistakes, and had average intelligence.  AR 19, 559.  Dr. Whitehead Gleaves noted Melendez expressed her thoughts in a coherent and logical manner, and had no loose associations or tangents.  AR 19-20, 559.  Dr. Lober found no evidence of end organ damage.  AR 70.

Alternatively, Melendez argues that she meets the standard for medical equivalency because she had multiple impairments that would be affected by her obesity.  Melendez's reliance on *Celaya* is misplaced.  Here, the record lacks evidence showing that her obesity exacerbated her condition.  Melendez argues that her extra weight would "have an impact" on her severe back pain and the ability to ambulate, but she offers no evidence showing equivalence.  *See Burch*, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.").  Melendez has not carried her burden to establish that her impairments meet or medically equal Listing 1.04 or Listing 14.10, and has not demonstrated that the ALJ erred at step three of the sequential evaluation.

In the Reply, Melendez argues that the additional medical evidence she submitted between the first and second hearings contained "an abundance of psychological/psychiatric evidence that would have benefitted from the eye and testimony of a mental health expert."[8]  JS 17.  Exhibits 25F-28F were submitted after the first hearing.  AR 205.  Exhibit 25F consists of a laboratory report.  AR 799-800.  Exhibit 26F consists of progress notes from Big Bear Lake Medical

---

[8]  She also contends that she submitted additional evidence to the Appeals Council that documented the diagnosis of Sjogren's.  However, the only additional evidence that the Appeals Council made part of the record was Exhibit 31B (request for review of hearing decision/order with contentions dated July 30, 2010), Exhibit 32B (good cause statement response regarding untimely filing dated December 1, 2011), and Exhibit 16E (representative correspondence dated August 8, 2011).  AR 5.

1   Group from January 2010 through March 2010 regarding complaints of blood in
2   vomit and stool, abdominal pain, SOB during day, flare up of lupus, increased
3   rash on abdomen, recent fall with pain to right leg and bruising, continued weight
4   loss, increased pain and left arm numbness, esophageal reflux, anxiety, panic
5   and depressive symptoms, and trouble breathing.  AR 801-06.  As the ALJ noted,
6   Melendez reported that her crying, depressive symptoms and anxiety decreased
7   after she resumed taking Zoloft and Wellbutrin on January 18, 2010.  AR 19, 803.
8   Exhibit 27F contains the same progress notes as in Exhibit 26F plus laboratory
9   results showing serum positive results for ANA and Sjogren's.[9]  AR 809-18.
10  Exhibit 28F consists of Dr. Ahluwalia's report and notes from March 2010
11  (diagnosing history of systemic lupus erythematosus, hypothyroidism, plaquenil
12  therapy, degenerative disc disease of the lumbar spine, fibromyalgia, and
13  obesity) and April 2010 (diagnosing undifferentiated connective tissue disease
14  with +ANA and +SSA ab and back pain).  AR 822, 824.  Based on the additional
15  evidence submitted, an updated medical opinion under SSR 96-6p was not
16  required.  *See* SSR 96-6p ("[A]n administrative law judge and the Appeals
17  Council must obtain an updated medical opinion from a medical expert . . . [w]hen
18  additional medical evidence is received that in the opinion of the administrative
19  law judge or the Appeals Council may change the State agency medical or
20  psychological consultant's finding that the impairment(s) is not equivalent in
21  severity to any impairment in the Listing of Impairments.").

22      To the extent Melendez makes arguments regarding Listing 14.06 and the
23  need to consult a medical expert, her arguments fail.  Melendez argues that the
24  ALJ did not mention listing 14.06 (undifferentiated and mixed connective tissue
25  disease).  Although the ALJ did not specifically discuss Listing 14.06, he

27      [9]  The laboratory results in Exhibit 27F are duplicates of laboratory results
28  in Exhibit 24F (without marginalia), which was not admitted because of the
    marginalia.  AR 35.

1  addressed the diagnosis of undifferentiated and mixed connective tissue disease.

2  AR 14.  Dr. Lorber, the ME, testified that Melendez did not meet or equal Listing

3  14.06.  AR 70; *see Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990)

4  ("It is unnecessary to require the Secretary, as a matter of law, to state why a

5  claimant failed to satisfy every different section of the listing of impairments.").

6  Melendez further contends that the ALJ erred by not consulting with a

7  medical expert on the issue of equivalency after she submitted additional records.

8  At the first hearing, Dr. Lorber testified Melendez did not meet or equal Listing

9  1.04 because there was no evidence of focal neurologic deficit in the lower

10  extremity.  AR 69.  He testified Melendez did not meet or equal Listing 14.06

11  because there was no evidence of end-organ disease in her vision, kidneys or

12  any other part of her body.  AR 69-70, 678.  The records submitted after the first

13  hearing do not provide evidence of focal neurologic deficit in the lower extremity

14  or end-organ disease.  AR 166-67, 799-825.  The ALJ did not err.

15  ### E.    The ALJ's RFC Determination

16  The RFC determination measures the claimant's capacity to engage in

17  basic work activities.  *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022,

18  90 L. Ed. 2d 462 (1986).  The RFC assessment is a determination of "the most

19  [an individual] can still do despite [his or her] limitations."  20 C.F.R. §

20  404.1545(a).  It is an administrative finding, not a medical opinion.  20 C.F.R. §

21  404.1527(e)(2).  The RFC takes into account both exertional limitations and

22  non-exertional limitations.  "When there is conflicting medical evidence, the

23  Secretary must determine credibility and resolve the conflict."  *Thomas*, 278 F.3d

24  947, 956-57 (citation omitted).  Even if an impairment is considered non-severe,

25  in determining a claimant's residual functional capacity, the ALJ must consider

26  the limiting effects of all of the claimant's impairments.  20 C.F.R. § 416.945(e);

27  SSR 96-8p.

28  The ALJ found that Melendez has the RFC for light work, can occasionally

13

1   climb ramps and stairs, balance, bend, stoop, crouch, and kneel, but can never
2   climb scaffolds or ropes.  AR 16.  She should avoid working with dangerous
3   machinery or at unprotected heights, and with fumes, odors, gases, dust, and
4   chemicals.  *Id.*  She should not perform safety operations or be responsible for
5   the safety of others, and should not perform work requiring hyper-vigilance.  *Id.*

6        Dr. Lorber, an ME, testified that he considered Melendez's impairments,
7   including obesity, and reviewed her medical records.  He concluded she could
8   nevertheless perform sedentary work.  AR 70-71.  The ALJ did not mention or
9   address the ME's opinion.

10       Dr. Lankford, a state agency review physician, opined that Melendez had
11   marked limitations in her ability to understand, remember and carry out detailed
12   instructions, and in her ability to interact appropriately with the general public.[10]
13   AR 669-70.  Although the ALJ rejected Dr. Lankford's opinion that Melendez had
14   moderate limitations in social functioning, AR 19, the ALJ did not address these
15   restrictions.

16       The ALJ discounted Melendez's testimony that she was unable to sit for
17   more than ten minutes at a time based on his observation that, at the hearing,
18   she was able to sit twice as long.  AR 21; *see also* AR 555 (noting that Melendez
19   complained of back pain and stood up to stretch after about 25 minutes of sitting).

20       The matter will be remanded for consideration of the opinions of Dr. Lorber
21   and Dr. Lankford, and a potential sit/stand option.  However, contrary to
22   Melendez's argument, the ALJ discussed Dr. Whitehead Gleaves' opinions and
23   rejected them for reasons that are supported by substantial evidence.  AR 19-20.
24   The ALJ noted that the record showed no reports of auditory hallucinations and
25   no significant interpersonal problems with health care providers or her employers.

26

27       [10]  The court construes the word "detailed" on AR 671 as a typographical
28   error and that the correct word is "simple," consistent with the first two pages of
    his report.

AR 19.  The mental status examination results showed only mild difficulty with tasks requiring attention, concentration and memory.  AR 19-20, 559.  Dr. Whitehead Gleaves relied on Melendez's subjective reports, which the ALJ properly discounted.[11]  AR 19.  Contrary to Melendez's contention, Dr. Whitehead Gleaves did not observe Melendez suffering from hypervigilance, intrusive thoughts, anxiety and recurrent nightmares.  Rather, Melendez reported such conditions to Dr. Whitehead Gleaves.  AR 557.  The ALJ inferred that because Melendez's mental symptoms increased when she stopped taking antidepressants and decreased when she resumed taking her medication, her symptoms were reasonably controlled with medication.  AR 19.  The ALJ concluded that the evidence was inconsistent with Dr. Whitehead Gleaves' assessment of Melendez's GAF score and her opinion that it would be difficult for Melendez to function in an 8-hour day.  AR 19.

Melendez incorrectly argues that the ALJ's finding at step two regarding a severe mental impairment contradicts his findings that her mental impairment results in no restrictions of daily living, mild difficulties in social functioning, mild to moderate restrictions in concentration, and no episodes of decompensation.  JS 20.  The existence of a severe mental impairment found at step two does not necessarily equate to a finding of a disabling RFC.  *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (stating the satisfaction of the requirements at step two does not lead to the conclusion that the claimant has satisfied the requirements for disability).

_____

[11]  Melendez argues that Dr. Whitehead Gleaves reviewed other medical reports in conjunction with the consultative examination and did not rely solely on her subjective reports.  JS 21.  However, as the Commissioner argues, Dr. Whitehead Gleaves reviewed a daily activity questionnaire filled out by Melendez and a May 11, 2007 injection consultation for low back pain from Metroplex Orthopedics indicating that "patient feels depressed" and describing Melendez as "clearly depressed."  AR 370, 555.  The other notes Dr. Whitehead Gleaves reviewed were from the Emergency Room regarding abdominal pain.  AR 555.  Any error the ALJ made in stating that Dr. Whitehead Gleaves relied solely on Melendez's subjective reports is harmless.

1    The ALJ properly evaluated the opinion of Dr. Hillis, a treating physician

2    who completed a Medical Opinion Re: Ability To Do Work-Related Activities form

3    dated December 4, 2008.  AR 688-90.  An opinion of a treating physician is given

4    more weight than the opinion of non-treating physicians.  *Orn v. Astrue*, 495 F.3d

5    625, 631 (9th Cir. 2007).  To reject an uncontradicted opinion of a treating

6    physician, an ALJ must state clear and convincing reasons that are supported by

7    substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

8    When, as here, a treating physician's opinion is contradicted by another doctor,

9    "the ALJ may not reject this opinion without providing specific and legitimate

10   reasons supported by substantial evidence in the record.  This can be done by

11   setting out a detailed and thorough summary of the facts and conflicting clinical

12   evidence, stating his interpretation thereof, and making findings."  *Orn*, 495 F.3d

13   at 632 (citations and quotation marks omitted).  "When there is conflicting medical

14   evidence, the Secretary must determine credibility and resolve the conflict."

15   *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation

16   marks omitted).

17        Dr. Hillis opined Melendez could lift ten pounds occasionally and less than

18   ten pounds frequently, she could stand and walk less than two hours, and sit ten

19   minutes.  AR 18, 688.  He opined that she has to change positions every ten

20   minutes and needs to lie down every thirty minutes.  AR 18, 689.  She can never

21   twist, stoop, crouch, climb stairs, climb ladders, kneel, crawl or balance.  AR 18,

22   689.  Her ability to reach, handle, finger, feel and push/pull is restricted.  AR 18,

23   689.  She must avoid all exposure to extreme cold, extreme heat, wetness,

24   humidity, noise, fumes, odors, dusts, gases, poor ventilation, and hazards.  AR

25   690.  She would be absent from work more than three times a month

26   ("everyday").  AR 18, 690.  He concluded that she could not perform work on a

27   regular and continuing basis.  AR 18, 690.

28        The ALJ gave Dr. Hillis' opinions "little to no weight."  AR 18.  He found the

objective medical evidence did not support Dr. Hillis' opinions.  *Id.*  He cited the May 2007 and June 2008 MRIs of the lumbar spine that showed minimal physical abnormalities, treatment notes from Health First showing 5/5 muscle strength for the lumbar spine and active range of motion for the thoracic and lumbosacral spines, except for low back pain at less than ten degrees of extension of the lumbar spine, normal x-rays of the hands and feet, treatment notes from Dr. Ahluwalia indicating full range of motion of all joints with no synovitis or tenderness, and negative rheumatoid factors.  AR 18, 379-80, 431-32, 587, 679-81, 687, 822.  The ALJ noted that Dr. Hillis apparently relied primarily on Melendez's subjective reports, which he properly discounted as discussed below. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (ALJ may properly reject treating physician's opinion based on subjective complaints when ALJ properly discounts claimant's credibility).  The ALJ noted that Melendez failed to show up for a consultative examination.  AR 18.  The ALJ further noted that Dr. Hillis' opinions were inconsistent with the opinions of Dr. Collier, a State Agency review physician, who opined that Melendez could perform a range of light work.  AR 18, 578-83.  The ALJ found Dr. Collier's opinions were consistent with the objective medical evidence.  AR 18.  Dr. Lorber also disagreed with Dr. Hillis' opinions.  AR 70-71.  A non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ's rejection of Dr. Hillis' opinion is supported by substantial evidence. *See Orn*, 495 F.3d at 632.

### F.   Use of Cane

Melendez contends her use of a cane to ambulate prevents her from performing light work.  She argues that she uses a cane daily and her treating physician, Dr. Hillis, limited her to walking less than two hours in an eight hour

work day.  AR 37, 688-90.

The ALJ discussed Melendez's use of a cane.  AR 20.  He noted her testimony that, for the past six months, she used a cane every time she left the house.  AR 20, 37, 43-44.  He noted Melendez did not bring a cane to the hearing.  AR 20.  Dr. Whitehead Gleaves did not mention a cane and observed that Melendez's posture was upright and her gait was normal.  AR 20, 555.

Melendez argues that objective medical evidence supports her allegation that she requires a cane to ambulate. She contends that MRIs indicated "significant disc disease,"[12] and medical records reflected her back pain, right leg weakness, and unsteadiness on her feet. AR 370, 373, 380, 408, 821.  The Commissioner contends the objective evidence does not substantiate Melendez's claims that she requires a cane for ambulation.  The Commissioner noted records from 2007 showing Melendez as ambulatory, with a steady gait and no mention of a cane. AR 402, 408, 497.  Although Melendez arrived at an examination in 2007 with a cane, she did not use a cane to enter the examination room, and she could heel and toe walk with slight difficulty.  AR 431-32.  Melendez's medical records from 2010 did not indicate Melendez used or needed a cane.  AR 777-81, 801-06, 821-24.

It is the ALJ's province to interpret the medical evidence.  When the evidence is susceptible to more than one rational interpretation, a court must defer to the decision of the Commissioner.  *Moncada*, 60 F.3d at 523.  The ALJ

_____

[12]  The 2007 MRI of the lumbar spine reflected a 1 mm broad-based disc protrusion present at L5-S1 not impinging upon neural structures, a .5-1 mm bulge of annulus present at L4-L5 not impinging upon neural structures (indicative of disc damage), no acute fracture or unstable injury, desiccation of discs at L4 through S1 associated with Schmorl's node formation at inferior endplate of L5, and mild facet arthrosis throughout the lumbar range and facet effusions at L4-L5 and L5-S1 levels indicating posttraumatic inflammatory and reparative change. AR 380.  The 2008 MRI of the lumbar spine reflected mild posterior central disc protrusions at L4-5 and L5-S1, which mildly impinge upon the thecal sac at both segments, mild disc desiccation at L4-5 and L5-S1 with multiple small annular tears in the anterior and posterior fibers of both of the intervertebral discs, and minimal degenerative spondylosis at L4-5 and L5-S1.  AR 587.

1    did not err.

2        **G.      Hypothetical to VE**

3        Melendez contends the ALJ erred by not including limitations based on her

4    mental illness in the hypotheticals presented to the VE.

5        An ALJ may rely on testimony a VE gives in response to a hypothetical

6    that contains "all of the limitations that the ALJ found credible and supported by

7    substantial evidence in the record." *Bayliss*, 427 F.3d at 1217-18.

8        Because this matter is being remanded for consideration of the opinions of

9    Dr. Lorber and Dr. Lankford, and a potential sit/stand option, the ALJ is free to

10   reconsider his hypothetical to the vocational expert in light of those opinions.

11       However, contrary to Melendez's argument, the ALJ did not err in failing to

12   include side effects from medication in the hypothetical question to the VE.  JS

13   27-28.  The Ninth Circuit has recognized that medication side effects can

14   "significantly impact" a person's ability to work and should be considered in

15   disability determinations.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1169 (9th Cir.

16   2001).  The ALJ properly considered Melendez's medication and alleged side

17   effects.  AR 17, 20.  He noted her testimony that she took ten to twelve pills and

18   slept four to six hours during the day.  AR 17, 20, 40.  By contrast, he noted that

19   medical records evidenced  complaints of insomnia.  AR 20, 467, 471, 475, 642,

20   681, 780.  The ALJ was not required to include limitations that he did not find

21   supported by substantial evidence.

22       Melendez further contends the ALJ did not include the limitations identified

23   by Dr. Hillis.  JS 29-30.  Because the ALJ properly discounted Dr. Hillis' opinions,

24   he was not required to include Dr. Hillis' limitations in the hypothetical to the VE.

25   *See Rollins*, 261 F.3d at 858 ("Because the ALJ included all of the limitations that

26   he found to exist, and because his findings were supported by substantial

27   evidence, the ALJ did not err in omitting the other limitations that [the plaintiff] had

28   claimed, but had failed to prove.").

1

### H.   Credibility

2

"To determine whether a claimant's testimony regarding subjective pain or

3

symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*

4

*v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must

5

determine whether the claimant has presented objective medical evidence of an

6

underlying impairment 'which could reasonably be expected to produce the pain

7

or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344

8

(9th Cir. 1991) (en banc)).  The ALJ found that Melendez's medically

9

determinable impairments could reasonably be expected to produce the alleged

10

symptoms.  AR 17.

11

"Second, if the claimant meets this first test, and there is no evidence of

12

malingering, the ALJ can reject the claimant's testimony about the severity of her

13

symptoms only by offering specific, clear and convincing reasons for doing so."

14

*Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making

15

a credibility determination, the ALJ 'must specifically identify what testimony is

16

credible and what testimony undermines the claimant's complaints[.]'" *Greger v.*

17

*Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).  Here, the ALJ

18

found that Melendez's statements concerning the intensity, persistence and

19

limiting effects of her symptoms were not credible to the extent they were

20

inconsistent with the RFC assessment.  AR 17.

21

In weighing credibility, the ALJ may consider factors including:  the nature,

22

location, onset, duration, frequency, radiation, and intensity of any pain;

23

precipitating and aggravating factors (e.g., movement, activity, environmental

24

conditions); type, dosage, effectiveness, and adverse side effects of any pain

25

medication; treatment, other than medication, for relief of pain; functional

26

restrictions; the claimant's daily activities; and "ordinary techniques of credibility

27

evaluation." *Bunnell*, 947 F.2d at 346 (citing SSR 88-13) (quotation marks

28

omitted).  The ALJ may consider (a) inconsistencies or discrepancies in a

claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ discounted Melendez's credibility because of the lack of objective medical evidence supporting the degree of limitations, exaggerated complaints, and inconsistencies between Melendez's subjective allegations and her conduct. AR 20-21.

Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis. *Burch*, 400 F.3d at 681. The ALJ noted that Melendez's MRIs showed minimal abnormalities. AR 18, 379, 587. Treatment notes showed good muscle strength and good range of motion in her joints, despite complaints of pain and tenderness. AR 17-18, 431-32, 679-80. Melendez did not meet any criteria for lupus during Dr. Sinha's examination on December 1, 2008. AR 18, 679. In March and April 2010, Dr. Ahluwalia found no synovitis or tender joints and all joints with full range of motion with no nodules. AR 18, 822-23.

The ALJ may consider exaggerated complaints in the credibility evaluation. *Thomas*, 278 F.3d at 958-59. The ALJ noted that while Melendez testified that she reported to her doctors that she sleeps at least four to six hours during the day, the record contains no such complaints.[13] AR 20, 37, 44-45. He noted that while Melendez testified that she had been using a cane on a daily basis for the past six months, she did not bring a cane to the hearing. AR 20, 44; *see Orn*, 495 F.3d at 639 (ALJ may consider his personal observations at the hearing as part of the overall credibility evaluation). The ALJ noted that while Melendez

_____

[13] Melendez argues that she reported her insomnia and fatigue to her medical providers. JS 37; AR 557, 678-79, 681. While the record contains complaints about insomnia, sleep apnea, fatigue and a note that Melendez reported feeling "like taking a nap all the time," there appears to be no complaints about sleeping during the day. AR 467, 471, 475, 642, 681, 780, 811-12.

testified that she used a cane when she visited a doctor, Dr. Whitehead Gleaves noted no cane and upright posture and normal gait.  AR 20, 44, 55.  The ALJ noted a medical record from Methodist Health System indicating that when Melendez came to the Emergency Room complaining of back pain, she was observed walking in the hallway without any problems, but she began to cry when the healthcare provider entered the room.  AR 17, 426.

An ALJ may properly consider inconsistencies between testimony and conduct when weighing a claimant's credibility.  *Thomas*, 278 F.3d at 958-59. The ALJ noted Melendez's testimony that she was unable to sit for more than ten minutes before she must either stand or lie down.  AR 21, 36.  The ALJ observed that during the hearing, she sat twice as long without standing or lying down, despite being told that she could change positions.  AR 21, 56; *see also* AR 555 (noting Melendez stood up to stretch after 25 minutes of sitting).[14]  AR 21, 41.

The ALJ's credibility finding is supported by substantial evidence.  "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing."  *Thomas*, 278 F.3d at 959 (citing *Morgan*, 169 F.3d at 600).

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is

---

[14]  Melendez's reliance on the unpublished case of *Poppa v. Comm'r of Soc. Sec. Admin.*, 202 F.3d 278, 1999 WL 1048664 (9th Cir. 1999), is misplaced. Melendez argues that as in *Poppa*, her "subjective testimony should be fully credited[] because of her medical diagnoses."  JS 31.  In *Poppa*, the Ninth Circuit found that the ALJ did not provide clear and convincing reasons to reject the subjective reports of pain and fatigue of the claimant, who suffered from lupus, because he found the claimant's pain and fatigue reports to be inconsistent with her annual trips to Norway to visit family.  *Poppa*, 1999 WL 1048664, at *3.  The court reasoned that "[v]isits to family are not inconsistent with the need to rest for extended periods, nor with debilitating pain."  *Id.*  Here, the ALJ did not discount Melendez's credibility based on inconsistencies with international travel.  He discounted Melendez's credibility based on a variety of clear and convincing reasons.

reversed and remanded for consideration of the opinions of Dr. Lorber and Dr. Lankford, and a possible sit/stand option.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 25, 2013

ALICIA G. ROSENBERG
United States Magistrate Judge

23